# ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2015 JUL 29 AM 11: 39

CLERK C Adams
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | | |
|---|---|---|
| SHERRILYN TAYLOR, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 313-069 |
| | * | |
| RICHARD TAYLOR and CLARENCE | * | |
| SANDERS, in their individual | * | |
| capacities, and LYNDA | * | |
| WAMMOCK, | * | |
| | * | |
| Defendants. | * | |

## O R D E R

Before the Court is Defendant Richard Taylor's ("Deputy Taylor") and Defendant Clarence Sanders' ("Sheriff Sanders") motion for summary judgment. (Doc. no. 30.) For the reasons set forth herein, the motion is **GRANTED**.

## I. BACKGROUND

### A. Factual History

1. The Complaints and Investigation

On September 18, 2011, pro se Defendant Lynda Wammock ("Wammock") called the Montgomery County (Georgia) Sheriff's Office ("Sheriff's Office") and complained that Plaintiff Sherrilyn Taylor had been making harassing telephone calls to Wammock's home threatening to fight her if she saw her in public. (Deputy Taylor Dep., Ex. 6.) Although Plaintiff was

calling from a blocked number, Wammock recognized Plaintiff's voice because they had known each other for twenty years. (Wammock Dep. at 25-26, 70-71.) Deputy Taylor investigated Wammock's complaint by interviewing Wammock at her home, confirming that blocked calls appeared on Wammock's home telephone, and interviewing Plaintiff. (Deputy Taylor Dep. at 41-44.) Plaintiff denied the allegations and Deputy Taylor decided not to seek an arrest warrant. Three days later, Wammock reported that Plaintiff's calls had continued and that Plaintiff had threatened, "I'm gonna burn your house down bitch." (Id. at 58-59 & Ex. 9.) Deputy Taylor investigated this second complaint by re-interviewing Wammock at her home and confirming that more blocked calls appeared on Wammock's home telephone. (Id. at 59.) Not finding Plaintiff at her home, Deputy Taylor arranged to meet her at a local convenience store to discuss this second complaint.

Prior to the meeting, Deputy Taylor informed Sheriff Sanders of the status of the case and of his intent to apply for arrest warrants. (Id. at 61-64.) Sheriff Sanders permitted Deputy Taylor to use his discretion regarding the warrants. (Id.) Deputy Taylor prepared affidavits for arrest warrants for harassing telephone calls in violation of O.C.G.A. § 16-11-39.1 and terroristic threats in violation of O.C.G.A. § 16-11-37. (Defs. Mot. for Summ. J., Exs. F & G.) The magistrate

2

found probable cause and issued the warrants. (Id.) Aware of Plaintiff's public reputation for fighting, Deputy Taylor requested two back-up officers to accompany him to meet and arrest Plaintiff. (Deputy Taylor Dep. at 98, 104.)

2. The Arrest

Upon arrival at the convenience store, Deputy Taylor informed Plaintiff of Wammock's new allegations and that warrants had been issued for Plaintiff's arrest. (Deputy Taylor Dep. at 58, 98-99 & Ex. 7.) Plaintiff again denied the allegations and became argumentative. (Id., Ex. 7.) Several feet away, Plaintiff's friends in the car she had arrived in voiced their dissatisfaction with Deputy Taylor's attempt to arrest Plaintiff. (Id. at 72-73.) A disgruntled young adult male in the back seat of the car made eye contact with Deputy Taylor and motioned as if to exit the vehicle to confront him. (Id.) Deputy Taylor yelled at the young man, which had the desired effect of convincing him to remain in the vehicle and of alerting the back-up officers to possible trouble from Plaintiff's companions. (Id.) Plaintiff, still demonstrating a general attitude of noncompliance, stepped away from Deputy Taylor. (Id. at 98.) Deputy Taylor then grabbed her by the upper arms and slammed her into the side of one of the patrol cars. (Id.) The officers then brought Plaintiff to the Sheriff's Office for processing. (Id., Ex. 11.) During the

3

drive, Plaintiff asked one of Deputy Taylor's back-up officers if her head was bleeding. (Id., Ex. 7.) Rather than answering, the officer advised Plaintiff to speak with Deputy Taylor. (Id.) At the Sheriff's Office, Deputy Taylor presented the arrest warrants to Plaintiff and provided her an opportunity to review them. (Id. at 97-98.)

The same day, pursuant to an agreement between Montgomery County and Irwin County, Plaintiff was transferred to the Irwin County Detention Center. (Pl. Dep. at 24; Deputy Taylor Dep. at 85-87.) The agreement between the two counties, which governs housing and maintenance of inmates, provides in relevant part:

> 5. TRANSPORTATION: Irwin County shall transport the Montgomery County inmates from the Montgomery County Jail or any other facility housing inmates for Montgomery County and deliver them to the Irwin County Detention Center. In addition, Irwin County agrees to provide all subsequent transportation for Montgomery County's inmates to and from the Irwin County Detention Center when the attendance of such inmates is required for any judicial or medical proceeding as requested by Montgomery County.

(Sheriff Sanders Dep., Ex. 3.) Upon arrival at the Detention Center, Plaintiff received medical care for her bruised right hand. (Pl. Dep, Ex. 11.) A radiological consultation revealed no fractures, no dislocation or abnormality, and characterized her right hand as "normal." (Id.) On September 23, 2011, Plaintiff again sought treatment for injuries allegedly caused during her arrest. (Pl. Statement of Material Facts, Ex. 5.)

4

She was diagnosed with blunt trauma on her right hand, multiple contusions on her right hand, forearm, and right upper eyelid, and a contusion on the left side of her chest wall. (_Id._) The treatment plan included a splint on her right hand and pain medication. (_Id._) The clinician observed no obvious fractures, but noted a need for x-rays as soon as possible. (_Id._)

### 3. The Parole Hold

At the time of her arrest, Plaintiff was on parole for an earlier felony charge. (Pl. Dep. at 36; Defs. Mot. for Summ. J., Ex. I.) Because her arrest violated the conditions of her parole, the State Board of Pardons and Paroles issued, on the date of her arrest, a warrant and order for Plaintiff's arrest for parole violation. (Defs. Mot. for Summ. J., Ex. I.; Deputy Taylor Dep. at 91.) That warrant states "[a]s a parole violator this subject is not bondable under any circumstances." (Defs. Mot. for Summ. J., Ex. I.) After Deputy Taylor arrested Plaintiff, a parole officer called the Sheriff's Office and informed the Sheriff's staff that a parole hold had been placed on Plaintiff. (Sheriff Sanders Dep. at 42.) Due to the parole hold, Sheriff Sanders waited for the Superior Court of Montgomery County to set bond in Plaintiff's case rather than promptly presenting Plaintiff before a Magistrate. (_Id._)

4. Detention and Release

On September 30, 2011, the Superior Court of Montgomery County set a $15,000.00 property bond for Plaintiff. (Pl. Dep, Ex. 5.) On October 6, 2011, Plaintiff through counsel requested that the Superior Court hold a bond hearing on October 18, 2011. (Pl. Dep., Ex. 6.) On October 12, the Sheriff's Office released Plaintiff to her family on bond. (Pl. Dep., Ex. 9.) Thus, Plaintiff was detained for twenty-one days without being brought before a magistrate. On February 6, 2012, the district attorney presented Plaintiff's case before a grand jury in Montgomery County, Georgia, for terroristic threats and harassing phone calls. (Pl. Statement of Material Facts, Ex. 7.) The grand jury returned a "no-bill." (Id.)

5. Medical Treatment

On October 13, 2011, one day after Plaintiff was released, she sought further medical treatment at the Lower Oconee Community Hospital. (Id., Ex. 5.) X-rays revealed a healing fracture of her right hand, but no determination was made regarding when the fracture occurred. (Id.) Pain medication was prescribed and instructions given to follow up with orthopedic staff for further problems. (Id.)

On November 9, 2011, Plaintiff returned to the hospital complaining of pain related to injuries she sustained during her arrest. (Id.) X-rays of her right hand, wrist and elbow

showed a spiral fracture of her hand. (Id.) Plaintiff was prescribed pain medication and instructed to wear a splint for four to six weeks. (Id.)

### B. Procedural History

On September 19, 2013, Plaintiff filed a complaint in this Court under 42 U.S.C. § 1983 for (1) malicious prosecution against all Defendants; (2) excessive use of force and denial of due process against Deputy Taylor; and (3) supervisory liability against Sheriff Sanders. In the complaint, Plaintiff also alleged state law claims for false arrest against all Defendants and assault and battery against Deputy Taylor. All claims against Deputy Taylor and Sheriff Sanders are against them in their individual capacities only.

On October 2, 2014, Deputy Taylor and Sheriff Sanders filed a motion for summary judgment. (Doc. no. 30.) The Court granted Plaintiff's consent motion to extend the response deadline from October 27, 2014, to November 4, 2014. (Doc. no. 46.) The Court then granted Defendants' consent motion to extend the reply deadline from November 21, 2014, to December 5, 2015. (Doc. no. 54.)

Defendant Wammock, who is not represented by counsel, filed an answer to Plaintiff's complaint in which she denies all allegations, states that she was not acting under color of law, and requests that all claims against her be summarily

dismissed. (Doc. no. 8.) She has not filed a motion for summary judgment.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc)(internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one

8

of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991)(explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997)(per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick,

2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56 and Local Rule 56.1.

The Clerk has given the non-moving party notice of the motion for summary judgment and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. no. 31.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985)(per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

### B. Plaintiff's Claims Under 42 U.S.C. § 1983

Plaintiff brings § 1983 claims against all Defendants for malicious prosecution, against Deputy Taylor for violation of due process and use of excessive force, and against Sheriff

10

Sanders for supervisory liability. Deputy Taylor and Sheriff Sanders move for summary judgment and argue that they are entitled to qualified immunity. In pro se Wammock's answer to Plaintiff's complaint, she seeks dismissal of the malicious prosecution claim.

1. Section 1983 Framework and Qualified Immunity

Section 1983 provides a civil remedy against any person who, under color of state law "subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A law enforcement officer is entitled to qualified immunity if "an objectively reasonable officer in the same situation could have believed" that his conduct violated no clearly established constitutional right. Id. Qualified

11

immunity from suit is intended to "allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).

Courts utilize a two-part framework to evaluate qualified immunity claims. One inquiry is whether the plaintiff's allegations, if true, establish a constitutional violation. Hope v. Pelzer, 536 U.S. 730, 736 (2002) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Another inquiry is whether the right violated was "clearly established." Saucier, 533 U.S. at 201. Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case. Pearson v. Callahan, 555 U.S. 223, 241 (2009).

2. Plaintiff's § 1983 Claim Against All Defendants for Malicious Prosecution

In Count 1, Plaintiff brings a claim against all Defendants for malicious prosecution under § 1983. Plaintiff contends that Defendants lacked probable cause to arrest her and, therefore, violated her Fourth Amendment right to be free from unreasonable seizures. To establish a § 1983 malicious

12

prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures. <u>Grider v. City of Auburn, Ala.</u>, 618 F.3d 1240, 1256 (11th Cir. 2010). Consequently, the existence of probable cause defeats a § 1983 malicious prosecution claim. <u>Id.</u> To receive qualified immunity, an officer need not have actual probable cause, but only "arguable" probable cause. <u>Id.</u> at 1257. "Arguable probable cause" exists where reasonable officers in the same circumstances and possessing the same knowledge as the defendants could have believed that probable cause existed to arrest plaintiff. <u>Id.</u> Indeed, it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable. <u>Id.</u> Whether an officer possesses arguable probable cause depends on the elements of the alleged crime and the operative fact pattern. <u>Id.</u> Showing arguable probable cause, however, does not require proving every element of the crime. <u>Id.</u> If the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply. <u>Id.</u>

Here, Deputy Taylor arrested Plaintiff pursuant to warrants for (1) terroristic threats and (2) harassing phone

calls. "A person commits the offense of a terroristic threat when he or she threatens to commit any crime of violence . . . with the purpose of terrorizing another . . . or in reckless disregard of the risk of causing such terror . . . ." O.C.G.A. § 16-11-37(a). At the time he sought the warrant for Plaintiff's arrest, Deputy Taylor had been given an account of the incident by the alleged victim, Wammock, which included the day and time of Plaintiff's threat to burn down Wammock's house. Wammock informed Deputy Taylor that, although the call had been placed from a blocked number, she recognized Plaintiff's voice because they had known each other for twenty years. To corroborate the complaint, Deputy Taylor confirmed that a blocked call appeared on Wammock's phone during the relevant time. This complaint was consistent with the complaint filed by Wammock three days earlier regarding Plaintiff's harassing phone calls and threat to physically harm Wammock. During the investigation of that complaint, Deputy Taylor had confirmed that blocked calls appeared on the alleged victim's home telephone.

Plaintiff insists that she did not make the alleged threat and argues that she was arrested solely on uncorroborated testimony. Section 16-11-37 provides that: "No person shall be convicted under this subsection on the uncorroborated testimony of the party to whom the threat is

communicated." The United States Court of Appeals for the Eleventh Circuit interprets this provision to be an evidentiary requirement which does not change the elements of the offense. <u>Williams v. Taylor-Lee</u>, 397 F. App'x. 608, 610 (11th Cir. 2010). In <u>Williams</u>, the plaintiff and her son confronted and allegedly threatened a tow truck driver who was attempting to repossess a car. An investigator obtained arrest warrants for violations of § 16-11-37, despite the plaintiff's denial of the allegations. In a § 1983 suit against the investigator, the plaintiff argued <u>inter alia</u> that there was no arguable probable cause for the arrest warrants and that the investigator failed to sufficiently corroborate the driver's complaint. The fact that the investigator had received his information from a direct witness to the alleged crime – namely, the victim – was important to the district court's finding of arguable probable cause. The Eleventh Circuit affirmed the district court's judgment and noted that *Georgia's corroborative evidence requirement is not a stringent one.* <u>Id.</u>; <u>see</u> <u>Geter v. State</u>, 300 Ga. App. 396, 398 (2009)("Slight circumstances may provide sufficient corroborating evidence. The quantum of corroboration need not in itself be sufficient evidence, but need only be that amount of independent evidence which tends to prove that the incident occurred as alleged.")

Here, like in <u>Williams</u>, Deputy Taylor received a complaint from an alleged victim of a terroristic threat, the alleged aggressor denied the allegations, and an investigation revealed admittedly thin corroborative evidence. Nonetheless, in both cases, a magistrate found probable cause. Under <u>Williams</u>, the Court finds that Deputy Taylor had arguable probable cause to believe that Plaintiff's conduct satisfied the elements of Georgia's terroristic threats statute.

Because *arguable probable cause* supported Plaintiff's arrest for violation of O.C.G.A. § 16-11-37, it is immaterial whether arguable probable cause also existed for her arrest for violation of O.C.G.A. § 16-11-39.1. <u>See</u> <u>Williams</u>, 397 F. App'x. at 610 (when an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which there is no probable cause nor his verbal announcement of the wrong offense vitiates the arrest). Therefore, Deputy Taylor and Sheriff Sanders are entitled to qualified immunity. Summary judgment in favor of these Defendants is **GRANTED** on Plaintiff's § 1983 malicious prosecution claim.

As for Plaintiff's § 1983 malicious prosecution claim against Wammock, Wammock asks the Court in her answer to Plaintiff's complaint to summarily dismiss the claim because she was not acting under color of law. A successful § 1983

16

action requires a showing that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States. Harvey v. Harvey, 949 F.2d 1127, 1129 (11th Cir. 1992)(citing Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 156-57 (1978)). Wammock was not acting under color of law, and therefore Plaintiff's malicious prosecution claim against her is **DISMISSED**.

3. Plaintiff's § 1983 Claim Against Deputy Taylor in His Individual Capacity for Use of Excessive Force

In Count 5, Plaintiff brings a claim against Deputy Taylor in his individual capacity for use of excessive force during Plaintiff's arrest in violation of the Fourth Amendment.

The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest. Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002). The question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer. Id. (citing Graham v. Connor, 490 U.S. 386, 396-97 (1989)). Use of force must be judged on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Id. Fourth Amendment jurisprudence has

17

long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002)(quoting Graham, 490 U.S. at 396, and citing Terry v. Ohio, 392 U.S. 1, 22-27 (1968)). Indeed, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396 (internal citation and quotation marks omitted). While some force in effecting an arrest is thus allowed, "determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Lee, 284 F.3d at 1197 (internal quotation marks omitted).

The United States Supreme Court in Graham established that, in order to balance the necessity of using some force attendant to arrest against an arrestee's constitutional rights, a court must evaluate several factors, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to

evade arrest by flight." Id. at 1197-98 (quoting Graham, 490 U.S. at 396).

In this case, Plaintiff alleges that Deputy Taylor grabbed her, slammed her into a patrol car bruising her head, arms, hand, and chest wall, and that using such force was excessive. The Court considers this allegation using the factors set forth in Graham.

(a) Severity of the crimes

Threatening to physically injure a person and burn down his or her home are severe crimes. Plaintiff denies making such threats. Nonetheless, under the first Graham factor, the Court finds that the severity of the crimes complained of and cited in the arrest warrants weigh against finding that Deputy Taylor's use of force was excessive.

(b) Threat posed to officers and others

As for the safety of others, the alleged threat of arson clearly poses a threat to the residents of the home and to those that live nearby. Plaintiff's public reputation for fighting indicated that officer safety may also be at risk during the arrest. Indeed, Deputy Taylor requested backup to reduce that risk. Thus, under the second Graham factor, considerations of public and officer safety supported the level of force used to arrest Plaintiff.

(c) Resisting arrest and/or flight

Although Plaintiff voluntarily met Deputy Taylor at the convenience store, she was argumentative during the encounter, demonstrated an attitude of noncompliance, and took steps backward prior to Deputy Taylor seizing her. Plaintiff's protestations and the disagreeable nature of her companions created an unstable situation which weighs in favor of Deputy Taylor under the third Graham factor.

All the factors set forth in Graham weigh in Deputy Taylor's favor as to the force he used to arrest her. Because Deputy Taylor's conduct did not violate a constitutional right, the Court need not determine whether that constitutional right was "clearly established" at the time of the alleged violation. Qualified immunity therefore protects Deputy Taylor from this claim. His motion for summary judgment on this claim is **GRANTED**.

4. Plaintiff's § 1983 Claim Against Deputy Taylor in His Individual Capacity for Violation of Due Process

In Count 3, Plaintiff alleges that Deputy Taylor violated her procedural due process rights protected by the Fourteenth Amendment as created by state law by failing to bring her before a judge within 72 hours of being arrested.

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. It is well-

settled that only a limited range of interests fall within this provision. Hewitt v. Helms, 459 U.S. 460, 466 (1983), overruled on other grounds, Sandin v. Conner, 515 U.S. 472 (1995). Liberty interests protected by the Fourteenth Amendment may arise from two sources – the Due Process Clause itself and the laws of the states. Id.; Kentucky Dept. of Corr. v. Thompson, 490 U.S. 454, 460 (1989)(quoting Hewitt); Sandin, 515 U.S. at 483-84 (states may "under certain circumstances create liberty interests which are protected by the Due Process Clause"). A state creates a protected liberty interest by placing substantive limitations on official discretion. Kentucky Dept. of Corr., 490 U.S. at 462 ("[T]he most common manner in which a state creates a liberty interest is by establishing 'substantive predicates' to govern official decision making . . . and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met.").

The statute relied upon by Plaintiff to assert that her state-created liberty interest was violated is O.C.G.A. § 17-4-26, which states in relevant part:

> Every law enforcement officer arresting under a warrant shall exercise reasonable diligence in bringing the person arrested before a judicial officer authorized to examine, commit, or receive bail and in any event to present the person arrested before a committing judicial officer within 72 hours after arrest.

21

Generally, this provision creates a liberty interest protectable by the Due Process Clause of the United States Constitution in being brought before a judge within 72 hours. Bunyon v. Burke County, 285 F. Supp. 2d 1310, 1321 (S.D. Ga. 2003)(arresting officer violated arrestee's due process rights by failing to take arrestee before a judicial officer); see State v. Godfrey, 204 Ga. App. 58, 59 (1992)(the 72 hour limit in O.C.G.A. § 17-4-26 refers to "the time within which a defendant must be brought before a magistrate"). Georgia law "specifically places this burden on the arresting officer." Bunyon, 285 F. Supp. 2d at 1323. However, the otherwise broad range of liberty interests protected by the Due Process Clause is more narrow in the case of a parolee. See Morrisey v. Brewer, 408 U.S. 471, 480 (1972)(parole revocation "deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions"); see also Williams v. Lawrence, 273 Ga. 295, 297-98 (2001)("Revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations.").

Plaintiff relies on Bunyon to argue that a violation of O.C.G.A. § 17-4-26 is ineluctably a violation of the Due

Process Clause. In Bunyon, the plaintiff was arrested pursuant to a warrant, was detained for twelve days without being brought before a judge, and was denied an opportunity to post bail. This Court concluded that "Georgia's statutes create a liberty interest, protectable by the Due Process Clause of the United States Constitution, in (1) being brought before a judge in 72 hours and in (2) being allowed to post bail on a misdemeanor charge." Bunyon, 285 F. Supp. 2d at 1323. However, the plaintiff in Bunyon was not a parole violator.

Here, the Georgia Parole Board issued an order and warrant for Plaintiff's arrest hours after Deputy Taylor took her into custody. Sheriff Sanders testifies that Plaintiff was not promptly taken before a judge because of her parole hold. Instead, he waited for the Superior Court to resolve the issue of her bond before taking further action. That court eventually set a bond, but not until after the 72 hour statutory time limit had passed. The Court concludes that Plaintiff received the process that was due to her. Because Deputy Taylor did not violate Plaintiff's constitutional right to due process, the Court need not consider whether that right was "clearly established" at the time of the alleged violation. Deputy Taylor is entitled to qualified immunity on this claim. His motion for summary judgment on this claim is **GRANTED**.

23

5. Plaintiff's § 1983 Claim Against Sheriff Sanders in His Individual Capacity for Supervisory Liability

In Count 6, Plaintiff alleges a supervisory liability claim against Sheriff Sanders in his individual capacity. Plaintiff's allegations in this respect are that Sheriff Sanders (1) authorized and condoned Plaintiff's arrest by Taylor; (2) refused to help Plaintiff despite knowing that she had been injured; (3) was aware that Plaintiff was not brought before a judge during her three-week incarceration; (4) participated in and condoned the unlawful arrest and imprisonment of Plaintiff; and (5) did not require Deputy Taylor to write a use of force report despite knowing that Taylor had, in fact, used force in effecting her arrest.

A supervisory official is only liable under § 1983 for the unconstitutional acts of his subordinates if he personally participated in the allegedly unconstitutional conduct, or his actions were causally connected to the alleged constitutional deprivation. Campbell v. Johnson, 586 F.3d 835, 840 (11th Cir. 2009). The central tenet in both offenses is a constitutional violation. Mann v. Taser Intern, Inc., 588 F.3d 1291, 1308 (11th Cir. 2008). As such, claims under a theory of supervisory liability fail if the underlying § 1983 claims fail. Id. In this case, each of Plaintiff's § 1983 claims fail. Thus, Sheriff Sanders' motion for summary judgment on Plaintiff's § 1983 claim for supervisory liability is **GRANTED**.

24

## C. **Plaintiff's State Law Claims**

In addition to Plaintiff's § 1983 claims, she brings state law claims of false arrest against all Defendants, and a claim against Deputy Taylor for assault and battery. Deputy Taylor and Sheriff Sanders move for summary judgment on all claims and Wammock seeks dismissal of the claim against her.

1. Plaintiff's Claim Against Deputy Taylor in His Individual Capacity for False Arrest

In Count 1, Plaintiff alleges a state law claim of false arrest against Deputy Taylor based on a lack of probable cause. Deputy Taylor responds that he is entitled to official immunity. "The Georgia Constitution allows state employees to be sued for performing their discretionary functions only if they act with actual malice or with actual intent to cause injury in the performance of their official functions." Jordan v. Mosley, 487 F.3d 1350, 1357 (11th Cir. 2007)(citing Ga. Const. art. I, § II, par. IX(d), and Gilbert v. Richardson, 264 Ga. 744, 752-53 (1994)). "Actual malice" requires a deliberate intention to do wrong and denotes express malice or malice in fact. Peterson v. Baker, 504 F.3d 1331, 1339 (11th Cir. 2007)(quoting Adams v. Hazelwood, 271 Ga. 414, 414 (1999)). In the context of a false arrest claim, a plaintiff in Georgia can show actual malice by presenting evidence of personal animus toward the arrestee, manufactured evidence, or knowing presentation of perjured testimony. Marshall v.

Browning, 310 Ga. App. 64, 68 (2011)(police detective did not act with actual malice when she proceeded with arrest and search warrants based largely on uncorroborated children's testimony); see Jordan v. Mosley, 487 F.3d 1350, 1357-58 (11th Cir. 2007)(whether officer acted with actual malice was a jury question where evidence showed that officer may have caused suspect to be arrested so that the officer could collect a civil debt from the arrestee).

Here, Plaintiff concedes that Deputy Taylor was acting within the scope of his authority during the investigation and arrest. Thus, Deputy Taylor is entitled to official immunity on Plaintiff's state law claim for false arrest absent a showing of actual malice or intent to injure Plaintiff. Plaintiff argues that Deputy Taylor's malice may be inferred from the lack of probable cause. She argues that Wammock's complaints and the record of blocked calls on her home telephone, without more, were insufficient for the issuance of arrest warrants. Plaintiff points to the fact that no indictment was obtained to support her position that probable cause for the arrest was lacking. Further, Plaintiff insists that her allegedly unlawful arrest was carried out at the behest of Wammock who maintains a close friendship with both Deputy Taylor and Sheriff Sanders.

As for the thin factual record upon which the arrest warrants were issued and the lack of an indictment, the circumstances of Deputy Taylor's investigation and arrest of Plaintiff are similar to those in <u>Marshall</u>, 310 Ga. App. 64. In both cases, arrests were made pursuant to warrants. The <u>Marshall</u> court held that actual malice cannot be inferred from the detective's perhaps misguided decision to pursue a warrant based on largely uncorroborated testimony. <u>Id.</u> at 69. The fact that the district attorney later concluded that the evidence did not amount to probable cause failed to sway the court that the detective's investigation was malicious. <u>Id.</u> at 67-69. Here, neither Deputy Taylor's decision not to investigate further prior to seeking arrest warrants nor the grand jury's return of a no-bill are evidence of actual malice. Plaintiff challenges the magistrate's determination of probable cause, but the Court leaves undisturbed the magistrate's finding in that regard.

As for Plaintiff's conspiracy theory, it misses the mark. At most, Plaintiff argues that Wammock ordered Deputy Taylor and Sheriff Sanders to arrest Plaintiff, and they complied with Wammock's instructions. Even if this theory had factual support, which it does not, it would be an indicator of Wammock's malice rather than Deputy Taylor's malice. Plaintiff does not argue that Deputy Taylor manufactured evidence or

knowingly presented perjured testimony. She does not insist
that his investigation and arrest of Plaintiff were motivated
by personal animus. She merely alleges that he and Sheriff
Sanders went along with Wammock's master plan. The Court finds
that Plaintiff fails to present evidence of Deputy Taylor's
actual malice, and therefore he is entitled to official
immunity on Plaintiff's false arrest claim.

   2. Plaintiff's Claim Against Sheriff Sanders in His
Individual Capacity for False Arrest

   In Count 1, Plaintiff also brings a claim of false arrest
against Sheriff Sanders. She alleges that his authorization of
her arrest amounts to actual malice. As noted, Deputy Taylor
arrested Plaintiff pursuant to valid warrants. Thus, to the
extent Sheriff Sanders authorized Plaintiff's arrest, there is
no evidence to suggest that such authorization was malicious
or calculated to injure her. Plaintiff fails to present
evidence of Sheriff Sanders' actual malice, and therefore he
too is entitled to official immunity on Plaintiff's false
arrest claim.

   3. Plaintiff's Claim Against Wammock for False Arrest

   Plaintiff alleges in Count 1 that Wammock lied to law
enforcement officers for the purpose of having Plaintiff
arrested and that such conduct amounts to false arrest under
Georgia law. Pro se Wammock's answer to Plaintiff's complaint
seeks summary dismissal of this claim because it has no

factual basis. In cases involving false arrest, the law in Georgia draws a distinction between occasions wherein a party directly or indirectly urges law enforcement officials to begin criminal proceedings, which result in potential liability, and incidents wherein a party merely relays information to an official who then makes an independent decision to arrest, which does not result in liability. <u>Adams v. Carlisle</u>, 278 Ga. App. 777, 792 (2006). Wammock filed two complaints against Plaintiff, both of which Deputy Taylor investigated. Plaintiff challenges the findings of that investigation, but presents no evidence from which a jury could determine that Wammock directly or indirectly urged Plaintiff's arrest. Plaintiff's state law claim against Wammock for false arrest is **DISMISSED**.

4. Plaintiff's Claim Against Deputy Taylor in His Individual Capacity for Assault and Battery

In Count 2, Plaintiff asserts that Deputy Taylor used unreasonable force during her arrest when he slammed her into a patrol car. She alleges that his conduct amounts to assault and battery and concedes that Deputy Taylor was acting within the scope of his authority during his use of force. Thus, Deputy Taylor is entitled to official immunity on this claim absent a showing of actual malice. While this immunity is not absolute, a review of cases involving allegations of excessive force under Georgia law shows that particularly egregious

29

facts are required to pierce it. See, e.g., Speight v. Griggs,
579 F. App'x. 757, 760 (11th Cir. 2014)(officer did not act
with actual malice when he ordered suspect to get on the
ground, suspect instead dropped to a knee rather than lying
flat on the ground, officer push-kicked suspect to the ground,
then accidentally shot suspect in the head as officer was
attempting to kneel on suspect and holster his sidearm);
Delong v. Domenici, 271 Ga. App. 757, 757-58 (2005)(officer
did not act with actual malice during arrest of intoxicated
motorist where officer handcuffed suspect, held suspect
against police car, then pushed him to the ground and
straddled him); Taylor v. Waldo, 309 Ga. App. 108, 111-12
(2011)(officer did not act with actual malice where officer
unnecessarily threw suspect to the ground and handcuffed him
roughly); Tittle v. Corso, 256 Ga. App. 859, 863
(2002)(officer did not act with actual malice where officer
threatened motorist with dog attack, used profanity, and
slammed motorist against officer's car); Selvy v. Morrison,
292 Ga. App. 702, 704 (2008)(officers did not act with actual
malice where, after a verbal confrontation, they grabbed the
arrestee's arm, twisted it behind her back, slammed her face
into a wall, used profanity, kicked her legs out from under
her and inadvertently kicked her ten-year-old son in the
process); Valades v. Uslu, 301 Ga. App. 885, 887 (2009)

(officer did not act with actual malice where officer, after an altercation with suspect, pulled her hair, picked her up causing injury to her shoulder, and threw her on the ground); cf. Hawkins v. DeKalb Cnty., Ga., 2008 WL 5000036, at *4 (N.D. Ga. Nov. 18, 2008)(officer acted with actual malice where officer previously threatened a suspect with physical harm, then during a later encounter with that suspect, the officer knelt on his back after he voluntarily lay flat on the ground, the officer restrained the suspect's arms, then commenced hitting the suspect multiple times in the head with the officer's firearm causing severe blood loss).

Here, Plaintiff's arrest was physical, forceful, unpleasant, and mildly injurious, but it was not malicious. There is nothing in the record to indicate that Deputy Taylor's use of force was motivated by actual malice toward Plaintiff or was intended to cause her injuries. Thus, he is entitled to official immunity on Plaintiff's state law claim for assault and battery.

### III. CONCLUSION

Upon the foregoing, the Court concludes that there is no genuine dispute as to any material fact and that Deputy Taylor and Sheriff Sanders are entitled to judgment as a matter of law on each of Plaintiff's claims against them.

**IT IS THEREFORE ORDERED** that Deputy Taylor's and Sheriff Sanders' motion for summary judgment (doc. no. 30) is **GRANTED**. Plaintiff's claims against Wammock are **DISMISSED**. The Clerk is directed to **ENTER JUDGMENT** against Plaintiff and **CLOSE** this case. Costs are taxed in favor of Deputy Taylor and Sheriff Sanders.

**ORDER ENTERED** at Augusta, Georgia, this ___ day of _____, 2015.

UNITED STATES DISTRICT JUDGE